FILED
2:57 pm Mar 28 2023
Clerk U.S. District Court
Northern District of Ohio
Cleveland

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, ) | |
| ) | Case No. 1:22-cr-540 |
| Plaintiff. ) | |
| ) | Judge Dan Aaron Polster |
| v. ) | |
| ) | OPINION & ORDER |
| MARQUIS WELLINGTON, ) | |
| ) | |
| Defendant. ) | |

Before the Court is the defendant's motion to suppress and request for an evidentiary hearing pursuant to *Franks v. Delaware*[1] ("*Franks* hearing"). In August 2022, law enforcement searched the defendant's Cleveland apartment and seized firearms, ammunition, and drugs. The defendant moves to suppress this evidence and the statements he made to law enforcement during the search. He argues that the affidavit lacked sufficient probable cause nexus of his criminal activities to his apartment, and that the affidavit contained deliberately false statements. The government counters that the search warrant contained sufficient probable cause, and the defendant failed to satisfy his burden for a *Franks* hearing. For the following reasons, the Court **DENIES** the defendant's motion to suppress and his request for a *Franks* hearing.

Procedural History

In March 2022, law enforcement began investigating the defendant, Marquis Wellington ("Wellington"), for drug trafficking. ECF Doc. 22-1, p. 6, ¶ 1. Over the next five months, law enforcement monitored Wellington's social media account, observed his online posts about drugs and firearms, surveilled suspected drug-selling locations, listened to recorded jail calls, and obtained warrants for his car, phone calls, and Instagram account. ECF Doc. 22-1, pp. 6-12, ¶¶

---

[1] 438 U.S. 154, 98 S. Ct. 2674 (1978).

1

1-32. Law enforcement was aware of Wellington's prior drug-related convictions that prohibited him from possessing firearms. ECF Doc. 22-1, p. 6, ¶ 2.

On August 18, 2022, law enforcement obtained a warrant from the Cuyahoga County Court of Common Pleas to search Wellington's suspected residence, Apartment #304 at the Huron Square Apartments, 1001 Huron Road, Cleveland, Ohio 44115 ("Apartment #304"). ECF Doc. 22-1, pp. 1-3. Attached to the search warrant was an affidavit that described the facts and circumstances that law enforcement believed established probable cause to search Apartment #304. *Id.* at pp. 4-15. The following day, the FBI and the Cleveland Gang Impact Unit searched Apartment #304. ECF Doc. 1-1, ¶ 10. Law enforcement found and seized two firearms, ammunition, and drugs. ECF Doc. 1-1, ¶ 15. Wellington was present during the search and made incriminating statements to law enforcement. ECF Doc. 1-1, ¶¶ 10-13. Three days later, the government filed a criminal complaint against Wellington in the Northern District of Ohio for violating 18 U.S.C. § 922(g), Felon in Possession of a Firearm. ECF Doc. 1.

On September 15, 2022, a grand jury indicted Wellington on four counts: Count 1, Possession with Intent to Distribute Fentanyl, 21 U.S.C. §§ 841(a)(l) and (b)(l)(C); Count 2, Possession with Intent to Distribute Methamphetamine, 21 U.S.C. §§ 841(a)(l) and (b)(l)(C); Count 3, Felon in Possession of Firearm and Ammunition, 18 U.S.C. §§ 922(g)(l) and 924(a)(8); and Count 4, Possession of a Firearm in Furtherance of a Drug Trafficking Crime, 18 U.S.C. § 924(c)(l)(A)(i). ECF Doc. 17. On January 31, 2023, Wellington moved to suppress the evidence seized from Apartment #304 and his statements to law enforcement. ECF Doc. 22. On February 28, 2023, Wellington filed a supplemental motion, requesting a *Franks* hearing based on law enforcement's purportedly false statements in the affidavit. ECF Doc. 23. A few days later, the Court requested a copy of the Instagram music video referenced in the defendant's

motions, and the government provided it. On March 7, 2023, the Government responded and opposed the defendant's motion to suppress and request for a *Franks* hearing. ECF Doc. 24. On March 21, 2023, Wellington filed a reply. ECF Doc. 25.

Probable Cause Standard

The Fourth Amendment guarantees that "no [w]arrants shall issue, but upon probable cause, supported by oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized." U.S. Const. amend. IV. "[P]robable cause exists when an affidavit shows a fair probability that criminal evidence will be found in the place to be searched." *United States v. Moore*, 999 F.3d 993, 996-97 (6th Cir. 2021) (citing *United States v. Hines*, 885 F.3d 919, 923 (6th Cir. 2018)) (further citations omitted). A probable cause "nexus" must connect the specific place law enforcement desires to search with the specific things it seeks. *United States v. Reed*, 993 F.3d 441, 447 (6th Cir. 2021) (citing *United States v. Carpenter*, 360 F.3d 591, 594 (6th Cir. 2004)) (further citations omitted). The connection between a suspect's "residence and the evidence of criminal activity must be specific and concrete, not vague or generalized." *United States v. Brown*, 828 F.3d 375, 382 (6th Cir. 2016) (citing *Carpenter*, 360 F.3d at 595)) (further citations omitted).

The standard of review for the sufficiency of an affidavit "is whether the magistrate had a substantial basis for finding that the affidavit established probable cause to believe that the evidence would be found at the place cited." *United States v. Greene*, 250 F.3d 471, 478 (6th Cir. 2001) (quoting *United States v. Davidson*, 936 F.2d 856, 859 (6th Cir. 1991)). When examining whether there was probable cause to issue a warrant, this Court is limited to "the information presented in the four-corners of the affidavit." *United States v. Crawford*, 943 F.3d 297, 305 (6th Cir. 2019) (quoting *United States v. Frazier*, 423 F.3d 526, 531 (6th Cir. 2005))

(further citations omitted). This Court must give "great deference" to a magistrate judge's finding of probable cause. *United States v. Allen*, 211 F.3d 970, 973 (6th Cir. 2000) (quoting *Spinelli v. United States*, 393 U.S. 410, 419, 89 S. Ct. 584, 591 (1969)). Reversal is warranted only if the magistrate judge arbitrarily exercised his or her discretion. *Crawford*, 943 F.3d at 305 (citing *United States v. Swihart*, 554 F.2d 264, 270 (6th Cir. 1977)). Wellington bears the burden of proof "to display a violation of some constitutional or statutory right justifying suppression." *United States v. Rodriguez-Suazo*, 346 F.3d 637, 643 (6th Cir. 2003) (quoting *United States v. Feldman*, 606 F.2d 673, 679 n.11 (6th Cir. 1979)).

Probable Cause Analysis

Wellington moves to suppress the evidence seized from Apartment #304 and his statements to law enforcement during the search. ECF Doc. 22, p. 1. He argues that the affidavit failed to establish "a sufficient probable-cause nexus between Apartment #304 and [the] firearms and narcotics" because there was no evidence that he possessed drugs or guns in his apartment. *Id.* at pp. 3, 12. He also claims the following deficiencies in the affidavit: law enforcement never conducted a controlled buy from Wellington and had no evidence that he possessed more than personal-use quantities or "more serious narcotics beyond marijuana;" the affidavit failed to "provide specific facts which establish the reliability of the anonymous source" and did not "independently corroborate" the FBI confidential human source's ("FBI source") information; and law enforcement failed to verify the Instagram subscriber information to confirm that Wellington is the owner and operator of the "quisdagreat" account. ECF Doc. 22, pp. 5, 6, 8. The government argues that the search warrant was valid because the affidavit provided the Court of Common Pleas judge with "a substantial basis for concluding that the search would

uncover evidence of criminal activity as required by the Fourth Amendment." ECF Doc. 24, pp. 7-8.

The Court finds there was sufficient probable cause to issue the search warrant. Wellington's line-by-line scrutiny is inconsistent with the standard mandated by the Sixth Circuit, and his selective reading of the affidavit ignores the considerable evidence tying him to Apartment #304. *See United States v. Greene*, 250 F.3d 471, 479 (6th Cir. 2001) ("[R]eview of an affidavit and search warrant should rely on a 'totality of the circumstances' determination, rather than a line-by-line scrutiny.").

Law enforcement obtained substantial evidence of Wellington's suspected drug and firearm offenses prior to the search. In April 2022, officers identified a car registered to Marquis Wellington LLC parked outside a suspected drug-selling location in Cleveland. ECF Doc. 22-1, p. 6, ¶ 4. The next month, officers listened to recorded jail calls, where Wellington and a suspected drug dealer discussed picking up drugs, relocating drug-selling locations, and collecting money. *Id.* at pp. 7-9, ¶¶ 11-15. Law enforcement observed Wellington's social media profile where he posted photos and videos of himself with drugs and guns. *Id.* at pp. 9-12, ¶¶ 16-30. After obtaining a warrant for his Instagram account, officers recovered Wellington's direct message communications about possessing firearms and distributing drugs. *Id.*

Law enforcement connected Wellington to the Huron Square Apartments through "physical surveillance, social media research, the Federal ping warrant and the vehicle tracker warrant." ECF Doc. 22-1, p. 11, ¶ 28. In July 2022, officers pinpointed Apartment #304 as Wellington's residence through an FBI source. *Id.* at p. 12, ¶ 29. The affiant attested to the source's reliability, stating, "all information provided by the FBI [source] throughout this investigation has been consistent with the evidence that has been discovered through other

investigative means." ECF Doc. 22-1, p. 12, ¶ 29. Additionally, the tracking device on Wellington's car revealed that from June 15, 2022 to July 30, 2022, the Huron Square Apartment building was the car's most frequented location. *Id.* at p. 13, ¶ 34.

Next, in August 2022, the FBI source and an FBI corroborating witness identified Apartment #304 as the location where Wellington held "a black AR-15 style assault rifle" in an Instagram music video. *Id.* at ¶ 31. The affidavit is silent on the corroborating witness's identity, reliability, and prior history with police. Even so, Sixth Circuit precedent permits this Court to consider the evidence. *See United States v. Hargis*, 2023 U.S. App. LEXIS 4908, *9 ("Even if an affidavit is deficient in establishing an informant's reliability, it may support a finding of probable cause, under the totality of the circumstances, if it includes sufficient corroborating information.") (internal quotation marks omitted) (quoting *United States v. Ray*, 803 F.3d 244, 275 (6th Cir. 2015)); *see also United States v. Tuttle*, 200 F.3d 892, 894 (6th Cir. 2000) (noting that "information received from an informant whose reliability is not established may be sufficient to create probable cause when there is some independent corroboration by the police of the informant's information").

Two days before the search, two FBI Special Agents visited the Huron Square Apartment building and confirmed that the building's elevator and parking garage "matched" the elevator and parking garage where Wellington performed in the Instagram music video. *Id.* at ¶ 32. The same FBI agents concluded that the parking spot that appeared in the Instagram music video was assigned to Apartment #304. *Id.* Furthermore, law enforcement confirmed that the car in the Instagram music video was an Enterprise rental car that Wellington rented just a few days before the search. *Id.* at p. 13, ¶ 33. Finally, the day before law enforcement executed the search

6

warrant, two FBI Special Agents "positively identified" Wellington leaving the front entrance of the Huron Square Apartments. ECF Doc. 22-1, p. 13, ¶ 35.

Viewing the totality of the circumstances presented in the affidavit, there was a fair probability that searching Apartment #304 would lead to the "fruits, instrumentalities, or evidence" of Wellington's suspected crimes. *Zurcher v. Stanford Daily*, 436 U.S. 547, 554, 98 S. Ct. 1970, 1975 (1978). The twelve-page affidavit described law enforcement's methodical five-month investigation, articulated specific and concrete facts about Wellington's suspected criminal activities, and provided the Court of Common Pleas judge a substantial basis to find that probable cause existed for the search.

The affidavit contained extensive evidence of Wellington's suspected drug and firearm offenses. It described the nexus between Apartment #304 and the defendant's suspected firearm offenses. But the affidavit did not directly articulate the nexus between Apartment #304 and the defendant's suspected criminal drug activity. The affidavit included facts indicating that Wellington was selling drugs and that he lived in Apartment #304, but it did not directly connect Apartment #304 with his suspected drug-related offenses. Even so, because law enforcement's five-month investigation established probable cause to suspect Wellington of being an "ongoing drug trafficker," there was a sufficient nexus to search his residence. *United States v. Sheckles*, 996 F.3d 330, 341 (6th Cir. 2021) (quoting *United States v. Feagan*, 472 F. App'x 382, 392 (6th Cir. 2012) (noting that in the Sixth Circuit, it is "well established that if there is probable cause to suspect an individual of being an ongoing drug trafficker, there is a sufficient nexus between the evidence sought and that individual's home"); *see also United States v. Gunter*, 551 F.3d 472, 482 (6th Cir. 2009) ("[A] sufficient nexus was provided by the inference that evidence of drug trafficking would be found at the residence of one who is engaged in ongoing drug trafficking.").

Therefore, the affidavit established a probable cause nexus between Wellington's suspected firearm and drug offenses and Apartment #304.

The alleged deficiencies Wellington identified in the affidavit do not change the Court's analysis. Even if law enforcement did not conduct a controlled buy from Wellington, independently corroborate the FBI source's information, or separately verify Wellington's Instagram account subscriber information, significant evidence implicates Wellington in the suspected drug and firearm offenses and connects him to Apartment #304. *See United States v. Allen*, 211 F.3d 970, 975 (6th Cir. 2000) ("[t]he affidavit is judged on the adequacy of what it does contain, not on what it lacks, or on what a critic might say should have been added."). Therefore, the affidavit established probable cause to search Apartment #304.

### *Franks* Hearing Standard

This Court may grant the defendant a *Franks* hearing if he: (1) makes "a substantial preliminary showing that the affiant knowingly and intentionally, or with reckless disregard for the truth, included a false statement or material omission in the affidavit;" and (2) proves "that the false statement or material omission is necessary to the probable cause finding in the affidavit." *United States v. Bateman*, 945 F.3d 997, 1008 (6th Cir. 2019) (quoting *United States v. Young*, 847 F.3d 328, 348 (6th Cir. 2017)) (further citations omitted). A search warrant affidavit enjoys "a presumption of validity." *Id.* (quoting *Franks*, 438 U.S. at 171). Wellington's allegations require an offer of proof, and "he also should provide supporting affidavits or explain their absence." *United States v. Bennett*, 905 F.2d 931, 934 (6th Cir. 1990) (citing *Franks*, 438 U.S. at 171).

8

### *Franks* Hearing Analysis

In his supplemental motion, the defendant alleges that law enforcement included false statements in the affidavit regarding three aspects of an August 2022 Instagram music video posted to his Instagram account: (1) the existence of a window in a room, (2) the identification of a specific parking spot assigned to Apartment #304, and (3) the color of the car that appears in the video. ECF Doc. 23, p. 2. Essentially, Wellington contends that the affidavit contains false details about the Instagram music video to make it more believable that an FBI confidential human source, an FBI corroborating witness, and two FBI agents accurately identified Wellington's apartment, apartment building, and parking garage. ECF Doc. 22-1, ¶¶ 29-32.

The Instagram music video is 44 seconds long. It shows short clips of Wellington alone and rapping to music in an indoor garage, an elevator, and inside a room. When Wellington appears inside the room, the lighting changes from an ordinary, white light to a dark green light.

First, the affiant averred that an FBI source and a corroborating witness told law enforcement that the room in the video was inside Apartment #304. ECF Doc. 22-1, p. 12, ¶ 31. The affiant explained that the corroborating witness relied on his "familiarity with the position of the window" and his "knowledge that the window was located at the northern living space of Apartment #304." *Id.* The affidavit did not describe how the FBI source made his/her determination. Wellington challenges the corroborating witness's ability to identify his apartment because he contends that "there is no window observable in the music video." ECF Doc. 22, p. 8.

After viewing the Instagram music video, it is unclear whether there is a window in a room. The video's shifting camera angles, short clips, and fluctuating lighting make it difficult to ascertain this specific detail. Even so, the affiant's statements were a reasonable interpretation

9

of what he believed the Instagram music video showed. *See United States v. Tate*, No. 21-3436, 2022 U.S. App. LEXIS 11440, at *5-8 (6th Cir. Apr. 26, 2022) (affirming a district court's denial of a defendant's motion to suppress and request for a *Franks* hearing, where the court—after viewing the government's surveillance video in its entirety—concluded that the affiant's "interpretation of the video was a reasonable understanding of what he believed the facts to be"). The fact that Wellington's interpretation of the Instagram music video conflicts with the affiant's does not make the affiant's characterization false.

Moreover, Wellington must make a substantial showing that the affiant made the false statements rather than an informant. *See United States v. Rodriguez-Suazo*, 346 F.3d 637, 648 (6th Cir. 2003); *see also United States v. Giacalone*, 853 F.2d 470, 476 (6th Cir. 1988). In the affidavit, the affiant repeated what an FBI corroborating witness told him about the existence of a window in the Instagram music video. ECF Doc. 22-1, p. 12, ¶ 31. Because Wellington attacks the veracity of the FBI corroborating witness's statements rather than the affiant's, he fails to meet his burden for a *Franks* hearing. *See Giacalone*, 853 F.2d at 477 (holding the defendants were not entitled to a *Franks* hearing because their affidavits were not a substantial showing that the government affiant, and not the informants, made intentionally or recklessly false statements).

Second, the affiant averred that two FBI agents visited the apartment building and confirmed that the elevator and parking garage at Wellington's apartment building "matched" the elevator and garage in the Instagram music video. ECF Doc. 22-1, p. 12, ¶ 32. The FBI agents utilized a garage light fixture and pillar to determine that the parking spot in the Instagram music video was assigned to Apartment #304. *Id.* Wellington challenges the FBI agents' ability to

10

accurately identify the specific parking spot "based off a mundane light fixture" that "is featured on every pillar, on every floor, of the parking garage." ECF Doc. 23, p. 3.

After viewing the Instagram music video, it is unclear whether the parking spot is assigned to Apartment #304. For the reasons stated above, it is difficult to ascertain this specific detail in the video. Even so, the affidavit's statements were a reasonable interpretation of what he believed the Instagram music video showed. Wellington does not dispute that a light fixture and pillar appear in the Instagram music video and in his building's parking garage. Instead, he simply disagrees with the FBI agents' inference that the parking spot in the Instagram music video was assigned to Apartment #304. The defendant's conclusory allegation is insufficient to constitute a substantial preliminary showing that the affiant intentionally or recklessly made false statements. *See United States v. Stuart*, 507 F.3d 391, 396 (6th Cir. 2007) (citing *Franks*, 438 U.S. at 171) (stating that a defendant's allegation must be more than conclusory).

Third, the affiant avers that an FBI agent "confirmed" that the car in the Instagram music video was a black Kia Optima, license plate JLX-7431, and that Wellington rented it a few days earlier from Enterprise. ECF Doc. 22-1, p. 13, ¶ 33. Wellington asserts that the car is "grey," not black, and that the "make, model, and license plate are not visible in the video." ECF Doc. 23, p. 2-3. The government concedes that the car in the Instagram music video is gray and not black as the affidavit states. ECF Doc. 24, p. 17. The government argues that this error was not knowing and intentional and not necessary to the finding of probable cause. *Id.* The Court agrees. The affiant's description of the car as black instead of gray was reasonable. In the video, one can clearly see that the car's color is dark; but the parking garage's lighting makes it difficult to ascertain its exact color. Therefore, the government's misidentification of the car's color does

11

not constitute a substantial preliminary showing that the affiant intentionally or recklessly made false statements in the affidavit.

Even if the Court were to find that law enforcement intentionally or recklessly made false statements in the affidavit about the Instagram music video, the alleged falsehoods were inconsequential and not necessary to the probable cause finding. Under the totality of the circumstances, the Court of Common Pleas judge had a substantial basis to find probable cause that evidence of Wellington's suspected offenses was present in Apartment #304. *See United States v. Laughton*, 409 F.3d 744, 747 (6th Cir. 2005) ("The duty of a reviewing court is simply to ensure that the magistrate had a substantial basis for concluding that probable cause existed."). While some aspects of the Instagram music video may be unclear, it unmistakably shows Wellington holding a firearm. This fact, along with other corroborating evidence—such as the FBI source reporting that Wellington lived in Apartment #304 approximately one month *before* the video appeared and two FBI agents observing Wellington leave the apartment building one day before the search—created the necessary probable cause nexus between Wellington's suspected offenses and Apartment #304. ECF Doc. 22-1, p. 12, ¶¶ 29, 35. Therefore, Wellington also failed to prove that the purported false statements were necessary to the probable cause finding.

<u>Conclusion</u>

The search warrant affidavit contained a sufficient probable cause nexus to search Apartment #304, and the defendant failed to make a substantial preliminary showing to merit a

*Franks* hearing. Accordingly, the Court <u>DENIES</u> Wellington's motion to suppress and his request for a *Franks* hearing.

Date: March 28, 2023

                                             <u>*/s/ Dan Aaron Polster*</u>
                                             Dan Aaron Polster
                                             United States District Judge